Ross Day, OSB #002395
Day Law, P.C.
7831 St. Charles ST NE
Keizer, Oregon 97303
Mailing Address: P.O. Box 30148
Portland, Oregon 97294
ross@daylawpc.com
T:(503) 747-2705
F:(503) 914-1892
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

LINDSEY GRAHAM, an individual and
GLAMOUR!, LLC, an Oregon domestic
limited liability company,

                  *Plaintiffs*,

    *vs.*

KATE BROWN, in her individual capacity
and her official capacity as Governor of the
State of Oregon, STATE OF OREGON, by and
through its DEPARTMENT OF HUMAN
SERVICES, CHILD WELFARE DIVISION,
REBECCA JONES GASTON, in her individual
capacity and in her official capacity as
Director of the Oregon Department of
Human Services, Child Welfare Division,
JOEL BAXTER, in his individual and official
capacity as an employee of the Oregon
Department of Human Services, Child
Welfare Division, RONIKA FERGUSON, in
her individual and official capacity as an
employee of the Oregon Department of
Human Services, Child Welfare Division,
OMAR RUIZ, in his individual and official
capacity as an employee of the Oregon
Department of Human Services, Child
Welfare Division, STATE OF OREGON, by
and through its OFFICE OF THE GOVERNOR,
STATE OF OREGON, by and through its
PUBLIC HEALTH DIVISION, HEALTH

Case No.:

COMPLAINT

(Violation of Civil Rights, 42 U.S.C.
§1983; Violations of the United States
Constitution; Retaliation; Intentional
Infliction of Emotional Distress;
Wrongful Use of Civil
Proceedings/Abuse of Process,

AMOUNT IN CONTROVERSY:
$100,000.00

DEMAND FOR JURY TRIAL

**LICENSING OFFICE**, and **SYLVIE DONALDSON**, in her individual capacity and in her official capacity as Section Manager of the Health Licensing Office of the Public Health Division of the Oregon Health Authority

*Defendants*.

Plaintiffs Lindsey Graham and Glamour!, LLC allege as follows:

## INTRODUCTION

1.

For the first time in over 100 years, the United States is faced with a pandemic that threatened the health and safety of Americans across the Country. The response from federal, state and local officials oftentimes imposed heavy burdens on certain sectors of the economy, while other sectors of the economy – especially those that receive a paycheck from the government - have been left largely economically unaffected by these bureaucratic fiats.

2.

In Oregon, the government forced small businesses shut their doors and "ride out" the pandemic. The government imposed irrational and random restrictions on which businesses could remain open and which businesses had to close. The government provided little to no notice to the business owners or their employees before entire sectors of the economy were randomly closed for business.

3.

The sudden, irrational, draconian, and irresponsible orders from the Defendant state of Oregon caused many people to lose their jobs, their careers and their small businesses.

For many Oregonians, in an instant, their source of support and ability to provide for their families was eviscerated by an callous and unsympathetic bureaucracy.

4.

Defendant state of Oregon, and in particular Defendant Kate Brown, claimed the orders were necessary to protect the public's health, safety and welfare.  In fact, by shutting down private businesses, which in turn caused Oregonians to lose their jobs and their ability to support their families, caused **greater** negative health effects on Oregonians in the form of increased stress, anxiety and depression.  Oregonians who do not live off the public dole (like the individually named defendants) were suddenly forced to worry about how they would support themselves and their loved ones,  Oregonians were forced into this position by the very government bureaucracy that feeds off the productivity of Oregonians.

5.

While private business owners and their employees were forced to struggle through the government's draconian edicts, the individual defendants named in this action remained comfortable, collecting a paycheck on the backs of the very people who were losing their jobs, careers and businesses.  Defendant Kate Brown even lives in a mansion paid for by the taxpayers of Oregon, at a time when thousands of Oregonians are unable to make rent or mortgage payments.  The repugnant nature of this conflict should not be lost on anyone.

6.

After roughly six (6) weeks of living under Defendant Kate Brown's repressive regime, thousands of Oregonians decided they had enough.  On May 2nd, 2020, thousands of Oregonians protested against Defendant Kate Brown's orders shutting down the economy.  One of the protesters that day was Plaintiff Lindsey Graham, who, on May 2nd, 2020, decided

she would reopen her hair salon so that she, and the other hair stylists who lease space from

her, could earn a living to support their familes, much the same way all of the individual

defendants have been allowed to earn a living, uninterrupted by the government.

7.

Little did Plaintiff Lindsey Graham know that her small step of protest, of civil

disobedience, would make her and her business a target for all of the Defendants to take aim.

The conduct of the Defendants, individually and collectively, alleged below, is beyond

reprehensible.  The conduct of the Defendants represents the absolute worst abuses of power

one could possibly imagine.  Even George Orwell would be shocked and appalled at the

Defendants' conduct.  At the heart of the Defendants' conduct is the Defendants' ultimate

goal: make Plaintiff Lindsey Graham an example to anyone else who may try to experience

personal and economic freedom.  The Defendants wanted to teach Plaintiff Lindsey Graham

a lesson – and others like her: the Government gets to do what it wants, no questions asked.

8.

The government has used the fear of pandemic as an excuse to trample on the rights

of Oregonians over the last several of months.  While the government has broad authority to

take steps to protect the general public, that authority must be balanced against the individual

liberties protected by the United States and Oregon Constitutions.  If the government can

avoid the "inconvenience" of respecting the constitutional rights of individuals by simply

declaring the existence of a "public health emergency", then the rights guaranteed by the

United States and Oregon Constitutions are nothing more than wasted ink on an old piece of

paper.

9.

Plaintiff Lindsey Graham, and others like her, have a fundamental right to earn a living.  They have a right to take care of and provide for themselves and their families.  They have a right to protest the government.  They have a right to question the government.  They have a right not to believe the government.  They have a right not to trust the government.  And Plaintiff Lindsey Graham, and others like her, have a right – indeed a duty - to stand against the government when the safety and security of their families are put at risk by the very government that is supposed to be there to protect them.

## THE PARTIES

10.

Plaintiff Lindsey Graham (herein "Graham") is a resident of Marion County, Oregon.

11.

Plaintiff Glamour!, LLC  (herein "Glamour") is an Oregon domestic limited liability Company whose principal place of business is located in Marion County, Oregon.  Graham is the sole member of Glamour and sole owner of any units of ownership of Glamour.

12.

Defendant Kate Brown (herein "Brown") is sued in both her individual and official capacities.  In her official capacity, Brown is the Governor of the state of Oregon.  Each claim for relief against Brown, stated below, will designate whether Brown is being sued in her individual or official capacity.

13.

Defendant State of Oregon, by and through its Department of Human Resources, Child Welfare Division (herein "Child Welfare Division") is an agency of the of the state of Oregon.

14.

Defendant State of Oregon, by and through its Office of the Governor (herein "Office of the Governor") is an agency of the of the state of Oregon.

15.

Defendant State of Oregon, by and through its Health Licensing Office of the Public Health Division (herein "Health Licensing Office") is an agency of the of the state of Oregon.

16.

Defendant Rebecca Jones Gaston (herein "Gaston") is sued in both her individual and official capacities. In her official capacity, Gaston is the Director of the Child Welfare Division of the Oregon Department of Human Services. Each claim for relief against Gaston, stated below, will designate whether Gaston is being sued in her individual or official capacity.

17.

Defendant Joel Baxter (herein "Baxter") is sued in both his individual and official capacities. In his official capacity, on information and belief, Baxter is an employee of the Child Welfare Division of the Oregon Department of Human Services. Each claim for relief against Baxter, stated below, will designate whether Baxter is being sued in his individual or official capacity.

18.

Defendant Ronika Ferguson (herein "Ferguson") is sued in both her individual and official capacities.  In her official capacity, on information and belief, Ferguson is an employee of the Child Welfare Division of the Oregon Department of Human Services. Each claim for relief against Ferguson, stated below, will designate whether Ferguson is being sued in her individual or official capacity.

19.

Defendant Omar Ruiz (herein "Ruiz") is sued in both his individual and official capacities.  In his official capacity, on information and belief, Ruiz is an employee of the Child Welfare Division of the Oregon Department of Human Services.  Each claim for relief against Ruiz, stated below, will designate whether Ruiz is being sued in his individual or official capacity.

20.

Defendant Sylvie Donaldson (herein "Donaldson") is sued in both her individual and official capacities.  In her official capacity, Donaldson is the Section Manager of the Health Licensing Office of the Public Health Division of the Oregon Health Authority.  Each claim for relief against Donaldson, stated below, will designate whether Donaldson is being sued in her individual or official capacity.

21.

For purposes of this Complaint, all Defendants were serving in their official designated capacities at all relevant times.

22.

For purposes of this Complaint, all Defendants were at all relevant times, acting under color of law.

23.

Unless otherwise specifically delineated, all defendants shall be referred to herein collectively as "Defendants".

## VENUE AND JURISDICTION

24.

This case presents claims against the Defendants pursuant to 42 U.S.C. §1983, in addition to state law claims.  Accordingly, this Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1367 (supplemental claim jurisdiction).

25.

The acts giving rise to the claims presented in this complaint occurred in Marion County, Oregon.  Accordingly, venue is appropriate in this Court.

## GENERAL ALLEGATIONS

26.

Glamour and Graham operate Glamour! salon (herein "Salon").  The Salon, through its independent contractors, offers various services to its customers including but not limited to hair styling, makeup, hair extensions, nail care, esthetics services, skin care services, and tanning services (herein collectively "Services").

27.

Glamour and Graham are licensed by the Defendant Health Licensing Office to provide the Services to the public.

28.

In order to be able to provide the Services to the general public, Graham had to obtain a license from the Defendant Health Licensing Office (herein "Individual License").  In order for Graham  to obtain an Individual License from the Defendant Health Licensing Office, Graham had to complete the required education courses, perform a required number of hours of practical training, and successfully pass an examination proffered by the Oregon Board of Cosmetology.

29.

In order to be able to provide the Services to the general public, Glamour had to obtain a license from the Defendant Health Licensing Office (herein "Facility License").  In order for Glamour to be able to obtain the Facility License, Glamour had to demonstrate to the Defendant Health Licensing Office that it could provide the Services as required by law, and that Glamour could provide the Services in a manner that was safe to customers of Glamour, to the individual independent contractors that provide hair styling and other services to the general public, and to the general public as a whole.

30.

In addition to the requirements for obtaining the Individual License and the Facility License, Graham and Glamour (respectively) must continue to demonstrate the ability to safely provide the Services to Graham's customers, and the public in general.

31.

Graham has been licensed by the Defendant Health Licensing Office for the past fifteen (15) years.

32.

Glamour has been in operation – and licensed by the Defendant Health Licensing Office – since 2009.

33.

Neither Graham nor Glamour has ever been found to be in violation of any law or regulation applicable to the provision of the Services.

34.

The Salon is located at 195 Liberty Street in Salem, county of Marion, Oregon.

35.

Glamour leases spaces for other hair stylists to provide services similar to the Services provided by Glamour and Graham.  The stylists who provide services are required to have their own licenses (in good standing) with the Defendant Health Licensing Office, their own businesses, their own clientele, and their own operational structure.  The stylists who lease space from Glamour are independent contractors and not employees of either Glamour or Graham.

36.

Up until May 4th, 2020, Glamour has never received a notice of violation, a citation, an order, or any other form of discipline or communication from the state of Oregon or any of the named defendants, ever.

37.

Up until May 4th, 2020, Graham (who is a mother of three), never received a notice of violation, a citation, an order, or any other form of discipline or communication from the state of Oregon or any of the named defendants.  Personally, Graham never received any communications, notices, inquiries, reports, complaints or any other form of communication whatsoever from the Defendant Oregon Department of Human Services, Child Welfare Division.

38.

All of that changed on May 4th, 2020.

39.

On March 8th, 2020, Defendant, in her official capacity, Kate Brown declared an emergency under ORS 401.165 *et. seq.* due to the public health threat posed by the novel infectious coronavirus (herein "COVID -19") by signing Executive Order 20-03.  Defendant Kate Brown's declaration did not require facilities that provide cosmetology services to cease or restrict operations.

40.

On March 23rd, 2020, Defendant Kate Brown issued Executive Order 20-12 which was entitled "Stay Home, Save Lives". Executive Order 20-12 required certain types of barber shops and hair salons to cease operations immediately.  Executive Order 20-12 did not, however, apply to all cosmetology facilities like Glamour, nor all cosmetology service providers like Graham.

41.

According to the state of Oregon, under Executive Order 20-12, "Cosmetology services that are provided as part of the health and safety of those living in senior housing and long term care setting are permitted to operate under current facility contracts while adhering to guidance and policies on screening, social distancing, personal protection equipment and sanitization guidelines that the facility has in place." (herein "Special Exception"). There is no rational basis for the Special Exception.

42.

The Special Exception to Executive Order 20-12 was never made available to cosmetology service providers like Glamour and/or Graham. No defendant has ever provided any explanation why the Special Exception was not made for cosmetology service providers like Glamour and/or Graham.

43.

Executive Order 20-12, as it pertained to cosmetology service providers such as Glamour and Graham, was issued, in part, pursuant to ORS 433.441.

44.

Executive Order 20-12, by its terms, "remains in effect until terminated by the Governor."

45.

Executive Order 20-12 threatened anyone who dare violate the order with, among other penalties, criminal prosecution.

46.

Graham and Glamour dutifully followed the edicts of Executive Order 2012, ceasing operations from approximately March 24th, 2020 until approximately May 5th, 2020.

47.

As a result of ceasing operations, Graham suffered damages in that she lost business opportunity, revenue from clients, and damage to her reputation and goodwill. Unlike the individual named defendants who collected paychecks (because they work for the government) from March 24th, 2020 through May 5th, 2020 and were able continue to provide for themselves and/or their families, Graham (like many other people who do not have the luxury of working for the government) immediately lost a substantial source of income used to provide for herself and her young family.

48.

As a result of ceasing operations, Glamour suffered damages in the form of lost business opportunity, lease revenue, damage to its reputation and business goodwill.

49.

Graham and Glamour, like many other private businesses in Oregon forced to cease operations, continued to incur basic expenses such as food, mortgage payments, rent payments, utilities, medical bills, and other costs which were difficult to pay for because the government forced closure immediately stopped Graham and Glamour from generating income.

50.

The inability to generate revenue – and therefore income – by either Graham and/or Glamour caused undue stress and anxiety for Graham, which is directly attributable to being

forced to cease operations as ordered by Defendant Kate Brown through Executive Order 20-12.  The stress, anxiety and distress suffered by Graham is a reasonably foreseeable consequence of the conduct of Defendant Kate Brown and the other named defendants.

51.

While individuals and businesses such as Graham and Glamour struggled to make ends meet for nearly six (6) weeks, government employees like Defendant Kate Brown and the other individual named defendants did not have to worry about where their next paycheck would come from.  Defendant Kate Brown and the other individual named defendants received paychecks from the government without any stress or anxiety worrying about where their next paycheck would come from.  From the individual defendants' perspectives, they are always going to be paid, because they work for the government.

52.

Because Defendant Kate Brown and the other individually named defendants do not have to worry about losing their inability to provide for themselves and their families, they have developed a callous disregard and contempt for individuals like Graham and businesses like Glamour who, for six weeks, were practically begging for "permission" from Defendant Kate Brown to re-open so they could take care of themselves and their families.  Defendant Kate Brown purposefully ignored the plight of individuals and businesses like Graham and Glamour.

53.

With tensions rising, and no evidence that Defendant Brown would do anything in the near future to help struggling families and businesses, a group of Oregonians organized a protest for May 2nd, 2020, at the Oregon state capital building in Salem, Oregon, to beg

Defendant Kate Brown to "Re-Open Oregon".  The petitions of the group on May 2nd, 2020 were largely ignored by Defendant Kate Brown and others in the government-class.

54.

Graham attended the protest on May 2nd, 2020.  She met with many individuals and business owners who were equally concerned about their ability to provide for their families.

55.

After attending the May 2nd, 2020 protest in Salem, Oregon, Graham thought about the injustices forced upon her, her business, the other stylists who lease space from Glamour, and how all of these people are suffering while Defendant Kate Brown is not facing the same fate.  It was at that moment that Graham decided she would re-open her business and allow the stylists who rent space from Glamour to re-open as well, despite Executive Order 20-12.

56.

Graham did not, and does not, believe that Defendant Kate Brown has the lawful authority to force private businesses to cease operations if the private businesses can demonstrate they can operate safely without jeopardizing the public's health.

57.

Graham has never been given an opportunity – either before or after the issuance of Executive Order 20-12 – to demonstrate to any defendant her ability to provide the Services in a safe and healthy manner that allows her to continue to provide the Services while at the same time protecting the public's health.

58.

On May 3rd, 2020, Graham announced (in what she thought was a semi-private manner) on her Facebook page that she would "re-open" her business and provide the

Services to her clientele on May 5th, 2020.  Little did Graham know that her decision to "re-open" would bring the full wrath of Defendant Kate Brown and the Defendant state of Oregon upon her.  Graham's life would never be the same again.

59.

On information and belief, Graham's semi-private announcement that she would "re-open" on May 5th, 2020, quickly spread across the internet.  Soon, Graham received contact from various media outlets, describing Graham's desire to "re-open" as an act of "civil disobedience" against Defendant Kate Brown and Defendant state of Oregon.  In reality, all Graham wanted to do is to be able to provide for her family, and to allow those that lease space from Glamour the ability to provide for their families as well.

60.

On May 4th, 2020, several stories appeared in media outlets across the state of Oregon, and across the pacific northwest, about Graham's decision to "re-open".

61.

On May 4th, 2020, Graham arrived at the Salon and began the process of cleaning the Salon in preparation for "re-opening" on May 5th, 2020.  Graham followed appropriate health protocols, wiping down surfaces with anti-bacterial cleaner, cleaning floors, making sure proper mask hygiene protocols were in place, and other steps to ensure the Salon would be safe to the next day's customers.

62.

On May 4th, 2020, Graham received the first of what would be many communications from various state of Oregon agencies who were attempting to bully, intimidate, frighten and terrorize Graham into not "re-opening".  The first contact came from a person working for

the Oregon Occupational Safety and Health Administration (OSHA) who threatened Graham with as much as a $70,000.00 fine if Graham insisted on "re-opening" on May 5th, 2020.

63.

At the time of the visit from the OSHA bureaucrat Graham was confused because neither Graham or Glamour has employees. OSHA only has jurisdiction over "places of employment". A place of employment is a place where people are "employed", i.e. where people are employees. Since there were no "employees" of either Graham or Glamour, and OSHA already knew as much, the threat from OSHA on May 4th, 2020 was even more suspicious to Graham.

64.

The person from OSHA who threatened Graham did not ask Graham if she could provide the Services in a safe manner, consistent with appropriate health protocols. The person clearly arrived with one purpose in mind – deliver the message to Graham that her "civil disobedience" would not be tolerated by Defendant Kate Brown and Defendant state of Oregon. The OSHA representative told Graham that he would be back by the Salon the next day to make sure Graham got the message and would not open. The OSHA representative never, in fact, returned to the Salon. Little did Graham know that the message sent by OSHA was only the beginning.

65.

Graham decided she would not be bullied, or extorted, into doing what she needed to do in order to be able to provide for her family. On May 5th, 2020, at 10:00 a.m., with hundreds of supporters and the media present, Graham and Glamour "re-opened".

66.

Glamour leases the space where the Salon is located from the city of Salem.  On May 5th, 2020, Glamour and Graham received a letter from the city of Salem suggesting that Glamour may be in violation of its lease, and therefore may be in default of Glamour's lease with the city of Salem.  This was the second message Graham and Glamour received from the government communicating to Graham and Glamour that they had better do what the government tells them to do, or else.

67.

The city of Salem has never taken any action against Glamour and/or Graham, despite the threat in its May 5th, 2020 letter.

68.

On May 6th, 2020, for the first time ever, Graham and Glamour received an undated letter from Defendant Health Licensing Office threatening to impose civil penalties, including revocation of the Individual License and Facility License, as well as criminal penalties if Graham and/or Glamour did not comply with Defendant Kate Brown's demands. The message to Graham was clear - her "civil disobedience" would not be tolerated by Defendant Kate Brown and Defendant state of Oregon.  It was also clear to Graham that Defendant Health Licensing Office, Defendant Kate Brown, and indeed Defendant state of Oregon did not care whether Graham and Glamour could provide the Services in a safe manner, consistent with appropriate health protocols.

69.

Despite the threats, bullying and repeated "messages" sent to Graham and Glamour by the government, Graham and Glamour continued to provide the Services to select

clientele.  Importantly, no person who utilized any of the Services from May 5th, 2020 until the present have become sick with COVID-19.

70.

Defendant Kate Brown grew increasingly frustrated with the fact that Graham and Glamour refused to bow down to her authority.  Defendant Kate Brown publicly called Graham and Glamour's "re-opening" "unfortunate" and "irresponsible" – only further making Graham and Glamour a target by the government.  The fact that Defendant Kate Brown would refer to Graham's actions intended to help Graham provide for her family as "unfortunate" and "irresponsible" shows exactly how much disdain career government employees like Defendant Kate Brown have for people like Graham who need to provide for their families.

71.

Little did Graham know that the worst was yet to come.

72.

On May 6th, 2020, at 9:05 am, Defendant Oregon Department of Human Services, Child Welfare Division, allegedly received an "anonymous" complaint concerning Graham and her three children.  The "alleged complaint" was taken by Defendant Joel Baxter.

73.

No such complaint was ever actually received by Defendant Oregon Department of Human Services, Child Welfare Division.  The "alleged complaint" is a complete and total fabrication by Defendant Oregon Department of Human Services, Child Welfare Division to again target Graham and Glamour, this time by making the battle personal and doing the unthinkable – going after Graham's family.

74.

According to Defendant Oregon Department of Human Services, Child Welfare

Division records, the person making the "alleged complaint" "provided vague details" that

were based on "Hearsay, rumors, etc.".  The person making the alleged complaint admitted to

"not directly witness[ing] what she is reporting".

75.

The allegations made by the anonymous complainant are so outrageous, so ridiculous,

so unbelievable against Graham, no rational person could have actually believed the

allegations, let alone actually suggest the allegations be followed up on.

76.

Defendant Joel Baxter, as screener, consulted with his supervisor, Defendant Ronka

Ferguson.  Unbelievably, even though the alleged complaint was made by an anonymous

complainant who admits to never witnessing any conduct by Graham, Defendant Joel Baxter

and Defendant Ronka Ferguson required a response time of 72 hours – which suggests

Defendants Baxter and Ferguson thought someone's life was in danger, even though **nobody**

witnessed **anyone** doing anything wrong.

77.

Defendant State of Oregon, Department of Human Services, Child Welfare Division,

assigned the case to Defendant Omar Ruiz.

78.

On May 8th, 2020, Defendant Omar Ruiz made contact with Graham and her family.

79.

On May 11th, 2020, Defendant Omar Ruiz interviewed Graham and her family.

80.

Thereafter, Defendant Omar Ruiz closed the investigation into Graham and her family and found the complaint to be unfounded/unsubstantiated.

81.

The actions taken by the Defendants described in paragraphs 1 through 80, 84 through 88, 93 through 97, 102 through 105, 110 through 114, 119 through 123, and 126 through 129, of this Complaint, were taken for an improper purpose, and not for any legislative, executive, judicial or other proceeding authorized by law, or for any matter of public interest under consideration in any legislative, executive, judicial or other proceeding authorized by law.

82.

On May 19th, 2020, Graham and Glamour provided the defendants with a notice pursuant to O30.275 of their intent to bring various tort claims against the defendants.  In the alternative, this Complaint is being filed and served on the defendants within 180 days of the date of the events giving rise to the claims contained in this Complaint.

**FIRST CLAIM FOR RELIEF**
**(Violations of the Civil Rights Act – 42 U.S.C. §1983)**

**COUNT I**
**U.S. Const. Fourteenth Amendment**
**<u>Violation of Due Process</u>**
**(Against Defendant Kate Brown in her Official Capacity and Defendant State of Oregon)**
**(Seeking Declaratory and Injunctive Relief)**

83.

Plaintiffs reallege and incorporate the allegations contained in paragraphs 1 through 82 as if fully set forth herein.

84.

The Individual License and the Facility License are rights to operate granted by the Defendant State of Oregon, and more specifically Defendant Health Licensing Office, to Graham and Glamour, respectively.  The right to operate granted by the Individual License and the Facility License are constitutionally protected rights.

85.

Defendants Kate Brown and State of Oregon never provided the Plaintiffs with any process whatsoever before Defendants Kate Brown and State of Oregon deprived the Plaintiffs of the Plaintiffs' most basic civil rights.  Defendants Kate Brown and State of Oregon never provided Plaintiffs with any notice, any opportunity to defend themselves against Defendant Kate Brown and Defendant State of Oregon's actions, an impartial decision-maker, or any post-deprivation procedures whatsoever.

86.

The actions taken by Defendant Kate Brown and Defendant State of Oregon were taken with the intent to deprive the Plaintiffs of their basic civil rights guaranteed by the United States and Oregon Constitutions.

87.

Defendant Kate Brown and Defendant State of Oregon's actions described throughout this Complaint violated the Plaintiffs' most basic rights to procedural due process in violation of the United States Constitution.

88.

At all times Defendant Kate Brown and Defendant State of Oregon was acting under color of law.

89.

Plaintiffs are entitled to a declaration that Defendant Kate Brown and Defendant State of Oregon's actions, described above, violated the Plaintiffs' most basic rights to procedural due process in violation of the United States Constitution.

90.

Plaintiffs are entitled to injunctive relief, enjoining Defendant Kate Brown and Defendant State of Oregon from violating the Plaintiffs' most basic rights to procedural due process guaranteed by the United States Constitution, as described above.

91.

Pursuant to 42 U.S.C. §1988, the Plaintiffs are entitled to an award of their costs, disbursements and reasonable attorney fees.

**COUNT II**
**U.S. Const. Fourteenth Amendment**
**<u>Equal Protection of the Laws</u>**
**(Against Defendant Kate Brown in her Official Capacity and Defendant State of Oregon)**
**(Seeking Declaratory and Injunctive Relief)**

92.

Plaintiffs reallege and incorporate the allegations contained in paragraphs 1 through 82 as if fully set forth herein.

93.

The Individual License and the Facility License are rights to operate granted by the Defendant State of Oregon, and more specifically Defendant Health Licensing Office, to Graham and Glamour, respectively.  The right to operate granted by the Individual License and the Facility License are constitutionally protected rights.

94.

Executive Order 20-12 was not applied to all cosmetology facilities like Glamour, nor all cosmetology service providers like Graham. Notwithstanding the language of Executive Order 20-12, some cosmetology facilities and cosmetology service providers were allowed to continue to provide services, without suffering the same forms of harassment, intimidation, bullying and extortion Graham and Glamour were forced to endure by the Defendants.

95.

The actions taken by Defendant Kate Brown and Defendant State of Oregon were taken with the intent to deprive the Plaintiffs of their basic civil rights guaranteed by the United States and Oregon Constitutions.

96.

Defendant Kate Brown and Defendant State of Oregon's actions described throughout this Complaint treated Plaintiffs differently than other similarly situated persons and/or companies who hold the same licenses as the Plaintiffs in violation of Plaintiffs' right to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.

97.

At all times Defendant Kate Brown and Defendant State of Oregon was acting under color of law.

98.

Plaintiffs are entitled to a declaration that Defendant Kate Brown and Defendant State of Oregon's actions, described above, violated the Plaintiffs' most basic rights to equal

protection of the laws in violation of the United States Constitution.  There is no rational

basis for the differential treatment described herein.

99.

 Plaintiffs are entitled to injunctive relief, enjoining Defendant Kate Brown and

Defendant State of Oregon from violating the Plaintiffs' most basic rights to equal protection

of the laws, as described above.

100.

Pursuant to 42 U.S.C. §1988, the Plaintiffs are entitled to an award of their costs,

disbursements and reasonable attorney fees.

**COUNT III**
**U.S. Const. First Amendment**
**<u>Retaliation For Protected First Amendment Activity</u>**
**(Against All Defendants in their Official Capacities)**
**(Seeking Declaratory and Injunctive Relief)**
101.

Plaintiffs reallege and incorporate the allegations contained in paragraphs 1 through

82 as if fully set forth herein.

102.

Plaintiffs' decision to "re-open", and subsequent conduct including but not limited to

holding multiple rallies and media events constituted speech protected by the First

Amendment to the United States Constitution.

103.

The conduct of all Defendants, described above, was taken in direct response to, and

in a concerted effort, to squelch, infringe upon, damage, and prevent Plaintiffs speech, which

is protected by the First Amendment to the United States Constitution.

104.

The actions taken by the Defendants were taken with the intent to deprive the

Plaintiffs of their basic civil rights guaranteed by the United States and Oregon Constitutions.

105.

At all times all Defendants were acting under color of law.

106.

Plaintiffs are entitled to a declaration that all of the Defendants' actions, described

above, violated the Plaintiffs' most basic right to free speech and protest protected by the

First Amendment to the United States Constitution.

107.

Plaintiffs are entitled to injunctive relief, enjoining Defendants from violating the

Plaintiffs' most basic right to engage in free speech, as described above.

108.

Pursuant to 42 U.S.C. §1988, the Plaintiffs are entitled to an award of their costs,

disbursements and reasonable attorney fees.

**COUNT IV**
**U.S. Const. Fourteenth Amendment**
**<u>Substantive Due Process</u>**
**(Against All Defendants in their Official Capacities)**
**(Seeking Declaratory and Injunctive Relief)**

109.

Plaintiffs reallege and incorporate the allegations contained in paragraphs 1 through

82 as if fully set forth herein.

110.

Defendants engaged in a course of conduct intended to harass, intimidate, extort and bully the Plaintiffs into complying with an edict of Defendant Kate Brown.

111.

The conduct of all Defendants, described above, was taken in concert with one another, in an effort to prevent Plaintiffs from earning a living and supporting Graham's family, which Graham has a constitutional right to do.

112.

The conduct of all Defendants, described above, was taken in concert with one another, in an effort to interfere with Plaintiff Graham's right to raise her children, is especially disturbing and were not taken for a proper purpose.

113.

The actions taken by the Defendants were taken with the intent to deprive the Plaintiffs of right to substantive due process guaranteed by the Fourteenth Amendment to the United States.  There is no rational basis for the Defendants' conduct, or the decisions made by the Defendants to target, harass, bully and intimidate the Plaintiffs.

114.

At all times all Defendants were acting under color of law.

115.

Plaintiffs are entitled to a declaration that all of the Defendants' actions, described above, violated the Plaintiffs' right to substantive due process protected by the Fourteenth Amendment to the United States Constitution.

116.

Plaintiffs are entitled to injunctive relief, enjoining Defendants from violating the Plaintiffs' rights guaranteed by the Fourteenth Amendment to the United States Constitution, as described above.

117.

Pursuant to 42 U.S.C. §1988, the Plaintiffs are entitled to an award of their costs, disbursements and reasonable attorney fees.

**SECOND CLAIM FOR RELIEF**
**(Intentional Infliction of Emotional Distress)**
**(On Behalf of Plaintiff Graham Only)**
**(Against All Defendants in Their Individual Capacities)**

118.

Plaintiff Graham realleges and incorporates the allegations contained in paragraphs 1 through 82 as if fully set forth herein.

119.

Defendants' actions, described above, were intentional and intended to cause severe emotional distress to Graham.   In the alternative, the individual Defendants were acting as agents of the government with all the power and authority that comes with his position, and acted in a manner that was certain or substantially certain to result in severe emotional distress to Graham.

120.

The individual Defendants' actions, in fact, caused severe emotional distress to Graham.

121.

The individual Defendants' conduct described above far exceeds any limit of socially tolerable behavior.  The individual Defendants took part in a scheme, whether they were aware of the other participants or not, which constituted abuse of public office, in violation of ORS 162.415.  The individual Defendants were acting towards one goal – silencing Graham – and they undertook whatever means necessary to threaten, intimidate and terrorize Graham including:

- Threatening Graham with a $70,000.00 fine when they knew Graham had not been generating income for nearly six (6) weeks, knowing full well that such a fine would likely bankrupt Graham and Glamour;

- Threatening Graham with revocation of her Individual License and Facility License even though there was no evidence whatsoever that anything Graham or Glamour was doing presented any harm to the public;

- And worst of all, sending child protective services to Graham's home in a not-so-veiled threat based on an entirely fictitious "report" of child neglect that was allegedly based on an "anonymous" report from someone who never actually witnessed Graham do anything wrong.

122.

The individual Defendants, any one of them, could have stopped the persecution of Graham, but not a single person stepped in to do the right thing.  Instead, each individual Defendant continued to scheme of harassment, intimidation, bullying and borderline extortion developed by Defendant State of Oregon and perpetuated by Defendant Kate

Brown, who viewed Graham's attempts to provide for her family as "unfortunate" and "irresponsible". Under no circumstances is the conduct described in paragraph 121 acceptable conduct, and the fact that not one single individual Defendant stood up and tried to put a stop to the outrageous conduct is evidence of the individual Defendants' intent to cause harm – severe emotional distress – to Graham. The individual Defendants know better, but they did nothing.

123.

The severe emotional distress suffered by Graham is a reasonably foreseeable consequence of the outrageous conduct of the Defendants.

124.

As a result of the individual Defendants' conduct, Graham was harmed in the amount of $100,000.00, or an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**(Abuse of Process/Wrongful Use of Civil Proceedings)**
**(Against All Defendants)**

125.

Plaintiffs reallege and incorporate the allegations contained in paragraphs 1 through 82 as if fully set forth herein.

126.

As described in paragraphs 68 and 71 through 80, above, the Defendants undertook a scheme to institute a number of baseless attached against Graham and Glamour.

127.

On information and belief, the threats received by Graham and Glamour described in paragraph 66, above, were instigated by one or more of the Defendants

128.

All of the actions taken by the Defendants, described in paragraphs 66, 68, and 71 through 80, above, were resolved in Plaintiffs' favor.  There was absolutely no basis for the actions taken by the Defendants described herein.

129.

The primary purpose of the actions taken by the Defendants, described in paragraphs 66, 68, and 71 through 80, above, were to harass, intimidate, bully and borderline extort the Plaintiffs into complying with what the Plaintiffs in good faith believed were unconstitutional actions taken by the Defendants.

130.

As a result of the individual Defendants' conduct, Plaintiffs were harmed in the amount of $100,000.00, or an amount to be proven at trial.

*WHEREFORE*, Plaintiffs respectfully pray this Court for the following relief

1. On Plaintiffs' First Claim For Relief, Count I, a Declaration against Defendant Kate Brown and Defendant State of Oregon, declaring that the actions taken by Defendant Kate Brown and Defendant State of Oregon deprived the Plaintiffs of their basic procedural due process rights guaranteed by the Fourteenth Amendment to the United States Constitution;

2. On Plaintiffs' First Claim For Relief, Count I, an injunction against Defendant Kate Brown and Defendant State of Oregon, enjoining Defendant Kate Brown and Defendant State of Oregon from depriving the Plaintiffs of their basic procedural due rights guaranteed by the Fourteenth Amendment to the United States Constitution.

3.  On Plaintiffs' First Claim For Relief, Count II, a Declaration against Defendant Kate Brown and Defendant State of Oregon, declaring that the actions taken by Defendant Kate Brown and Defendant State of Oregon deprived the Plaintiffs of their right to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution;

4.  On Plaintiffs' First Claim For Relief, Count II, an injunction against Defendant Kate Brown and Defendant State of Oregon, enjoining Defendant Kate Brown and Defendant State of Oregon from depriving the Plaintiffs of the equal protection of the laws guaranteed by the Fourteenth Amendment to the United States.

5.  On Plaintiffs' First Claim For Relief, Count III, a Declaration against all Defendants, declaring that the actions taken by all Defendants deprived the Plaintiffs of their right to free speech guaranteed by the First Amendment to the United States Constitution;

6.  On Plaintiffs' First Claim For Relief, Count III, an injunction against all Defendants, enjoining all Defendants from taking any action that deprives the Plaintiffs their right to free speech guaranteed by the First Amendment to the United States Constitution.

7.  On Plaintiffs' First Claim For Relief, Count IV, a Declaration against all Defendants, declaring that the actions taken by all Defendants deprived the Plaintiffs of their right to substantive due process guaranteed by the Fourteenth Amendment to the United States Constitution;

8. On Plaintiffs' First Claim For Relief, Count IV, an injunction against all Defendants, enjoining all Defendants from taking any action that deprives the Plaintiffs their right substantive due process guaranteed by the Fourteenth Amendment to the United States Constitution.

9. On Plaintiff Graham's Second Claim For Relief, for a judgment against all individual Defendants in their individual capacities, in the amount of $100,000.00 or an amount to be proven at trial;

10. On Plaintiffs' Third Claim For Relief, for a judgment against all individual Defendants in their individual capacities, in the amount of $100,000.00 or an amount to be proven at trial;

11. Plaintiffs costs, disbursements and reasonable attorney fees pursuant to 42 U.S.C. §1988.

12. Any other relief the Court deems just and equitable.

**RESPECTFULLY SUBMITTED** this __8th__ day of July 2020

> **DAY LAW, PC**
> *Attorneys for Plaintiffs*
>
>
> _____/s/ Ross Day_____
> Ross A. Day, OSB #002395
> 7831 St. Charles Street NE
> Keizer, Oregon  97303
> Mailing address: P.O. Box 30148
> Portland, Oregon  97294
> T: 503-747-2705
> E: ross@daylawpc.com